UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

EVAN RAY YELLOWMAN,  No. 23-10397 t13

    Debtor.

## OPINION

    Before the Court is a mortgagee's motion for stay relief under 11 U.S.C. § 362(d)(4) and two motions filed by the chapter 13 trustee to dismiss the case. Debtor appeared for a hearing on the motions. He opposes stay relief because he is trying to save his house from foreclosure for the benefit of his family. He also argues that the trustee's motions are not well taken, or that her concerns have been addressed. Having reviewed the record of this case and the three other cases debtor has filed in this district in the last four years, the Court finds that the motions are well taken and should be granted.

A.    <u>Facts</u>.[1]

    The Court finds:[2]

    Debtor and his wife borrowed $211,830[3] from Bank2, n/k/a Chickasaw Community Bank, on December 31, 2015. They granted the bank a first mortgage on their house (the street address is 725 Sable Street in Farmington, New Mexico) as collateral for repayment of the loan. The note

---

[1] The Court took judicial notice of the docket in this case and the other cases Debtor filed in this jurisdiction. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.
[3] All dollar amounts are rounded to the nearest dollar.

required monthly principal and interest payments of $1,057, beginning February 1, 2016. The mortgage requires additional payments for taxes and insurance.

After the first two years, Debtor did not make regular payments on the note. The payment history attached to the bank's proof of claim shows:

| Year | Payments Required | Payments made |
|---|---|---|
| 2018 | 12/$14,760 | 5/$10,924 |
| 2019 | 12/$14,772 | 6/$8,571 |
| 2020 | 12/$15,070 | 6/$7,128 |
| 2021 | 12/$15,063 | 2/$2,511 |
| 2022 | 12/$15,063 | 0/$0 |
| 2023 | 5/$6,775 | 0/$0 |

The bank filed a foreclosure action against Debtor and his wife on August 31, 2018. They answered the complaint. On February 11, 2019, they agreed to entry of a foreclosure judgment. The special master appointed by the state court scheduled a foreclosure sale for June 20, 2019.

Debtor and his wife filed a chapter 13 case on May 8, 2019. They were represented by counsel. Their schedules I and J showed monthly net income of $791. Debtors timely filed a plan, proposing monthly payments of $1,075 for 56 months. In addition, they proposed to make their regular monthly mortgage payments "outside the plan." The arrearage on the home mortgage, about $32,000,[4] was to be paid by the trustee from plan payments. The Court confirmed the plan on August 30, 2019. It appears that the confirmed plan gave Debtor and his wife a legitimate chance of "saving the house." However, Debtor converted the case to chapter 7 in April 2020. At the time of conversion, Debtor had made six plan payments and had missed at least two payments. In addition, the bank had filed a motion for relief from stay in November 2019, alleging that Debtor had missed three post-petition "outside" mortgage payments. Debtor was granted a chapter 7 discharge on August 12, 2020.

---

[4] The plan recited that the arrearage was $31,000. The bank's proof of claim said it was $32,644.

After the chapter 7 case was closed, the special master rescheduled the foreclosure sale of the house for January 14, 2021.

Debtor filed his second chapter 13 case on October 22, 2020. As with the first case, he was represented by counsel. His schedules showed net monthly income of $198.[5] He timely filed a plan, proposing to make monthly payments of $1,135 for 58 months, and paying the regular monthly mortgage payments "outside the plan." He estimated his mortgage arrearage at $48,807.[6] The case never got off the ground: Debtor agreed to dismiss it in March 2021, without ever having made a plan payment.

Upon dismissal of Debtor's second bankruptcy case, the special master rescheduled the foreclosure sale for May 13, 2021. The sale was cancelled while the parties negotiated a possible loan modification. The special master re-noticed the sale for December 8, 2022.

Debtor's third chapter 13 case was filed pro se on December 7, 2022. His schedules showed a negative $600 net monthly income. He filed an application to pay his filing fee in installments. The Court held a hearing on the application on January 10, 2023, and denied it, ordering Debtor to pay the filing fee in full within 10 days. Debtor did not do so. Accordingly, the Court dismissed the case on January 25, 2023. No plan was filed, nor were any plan payments made.

Once again the special master rescheduled the foreclosure sale, this time for May 18, 2023.

Debtor filed this chapter 13 case pro se on May 17, 2023. He did not pay the filing fee or file a chapter 13 plan. In his schedules, Debtor valued the house at $248,890, encumbered by the

---

[5] Schedule J included $385 for a car payment. That was too low. On the petition date Debtor was financing a newly purchased 2016 Nissan Murano at $537 per month. The car payment was understated by $152. Debtor's net monthly income was $46—not nearly enough to pay the proposed plan payment of $1,135 per month.

[6] The bank's proof of claim listed the arrearage at $50,880.

bank's first mortgage.[7] No unsecured creditors are listed. Schedules I and J show a net monthly income of $433.

Debtor did not seek to extend the automatic stay beyond 30 days. Because Debtor's prior case was pending within one year of this case's petition date, and was dismissed, the automatic stay imposed under § 362(a)[8] terminated on June 17, 2023, as to the debtor. *See* § 362(c)(3)(A).[9]

Debtor applied to pay the filing fee in installments. The Court held a preliminary hearing on the application on June 13, 2023. Debtor did not appear. Because, inter alia, Debtor owed the filing fee for the prior case, the Court denied the application and ordered Debtor to pay the filing fee within ten days. Debtor complied.

On June 9, 2023, the bank filed a motion for relief from the automatic stay, alleging, inter alia:

> The instant Case is the Debtor's fourth case since the entry of the [foreclosure judgment] and, as such, Movant requests that the Court grant it prospective in rem relief from the automatic stay pursuant to § 362(d)(4)(B) of the Bankruptcy code for at least two years so that no stay can be imposed as to the Property by any future Bankruptcy filing. . . Movant submits that the . . . multiple bankruptcy filings were done as part of a scheme to delay and hinder the foreclosure sale of the Property and constitute appropriate grounds for prospective in rem stay relief . . . The multiple filings that resulted in the cancelation of multiple foreclosure sales have delayed and hindered Movant from moving forward with the sale of the Property. . . . . Movant asserts that the multiple filings were a part of a scheme to thwart Movant's ability to complete the foreclosure process, as the two prior Cases were dismissed shortly after filing. . . . As of May 23, 2023, the loan is due for the May 1, 2018 payment and the total to payoff is $272,965.98 . . . The San Juan County Assessor . . . reflects a 2023 actual value of $200,814.00. There is no equity in the Property.

---

[7] The bank's proof of claim asserts a secured claim of $275,020. Based on the amount of the 2020 judgment, this loan balance appears to be correct.

[8] Unless otherwise indicated, statutory references are to 11 U.S.C.

[9] This did not help the bank. Because of the discharge granted in the 2019 case, the bank's claim is in rem. Stay relief under § 362(c)(3)(A) only applies to the debtor, not the estate. *See In re McGrath*, 621 B.R. 260, 266 (Bankr. D.N.M. 2020); and *In re Holcomb*, 380 B.R. 813, 815 (10th Cir. BAP 2008).

Debtor responded to the bank's stay relief motion on July 5, 2023, stating:

> I object to the motion for relief from my stay; I will receive assistance from New Mexico Housing Assistance Program (MFA). The organization will contribute the amount of thirty thousand to the lender Mortgage Company Chickasaw Community Bank. The MFA program has contacted the bank to ask if they can accept the CDF program. However, they have yet to get an answer and are still waiting to respond to the MFA program and for the bank to accept payment of $30,000. We asked Chickasaw Bank to modify the delinquent amount to get caught back to the current monthly amount. I have been working with Loss Mitigation Department for some years, Chickasaw bank in the loss mitigation department. They have denied my request for a loan Modification or repayment option senesce [sic] the year of two thousand- eighteen (2018). Since then, we have been trying to communicate and on a repayment place. We are also in bankruptcy, to allow us to stay in our home and make some payments to the debtor. We can and will afford and pay a monthly payment of 1,366.19 to the mortgager company every month. My employer gave me a raise in my pay. I am at 30.00 hourly pay, and overtime is provided to me. I asked you to please grant us to stay in our home and provide a safe place for my wife and kids.

The chapter 13 trustee filed a motion to dismiss the case on June 21, 2023, for failure to timely file a chapter 13 plan.[10] Perhaps in response to motion, Debtor filed a plan on July 17, 2023, more than six weeks late. Debtor did not seek an extension of the plan filing deadline.

The plan is woefully deficient. It provides for monthly payments of $824 for six years, one year beyond the five-year maximum. The plan does not provide for treatment of Debtor's car loan. Treatment of the bank's secured claim is inadequate. Debtor proposes to pay the bank directly but cannot do so under local rule because he is more than two months in arrears on the petition date. Furthermore, the proposed payment to cure the prepetition arrearage appears to be $1 a month. Third, even if all plan payments were made to the bank, they would not cure the prepetition arrearage. There are other problems with the plan.

On July 13, 2024, the chapter 13 trustee filed another motion to dismiss, this time for Debtor's failure to attend the § 341 meeting. In response to the second motion, Debtor argued:

---

[10] The plan was due May 31, 2023. Fed. R. Bankr. P. 3015(c).

> I want to object to my failure to appear for the §341 meeting with the creditor's dismissal, which was scheduled for July 13, 2023, zoom meeting my U.S./ postal mail did not arrive on time for me to show up and comply to the rule of Chapter 13. I want to reschedule a time for me to comply in a timely matter to respond to the creditors and my Chapter 13 case. I want to apologize for the delays in my case solely; I have been under pressure and stress. . . I want to comply and go through with the Chapter 13 bankruptcy plan because I want to stay in the home that my family and I resign from [sic]

The Court held a hearing on the bank's stay relief motion and the trustee's dismissal motions on August 8, 2023. Debtor, the bank, and the chapter 13 trustee appeared and argued their positions. The Court took the motions under advisement.

On August 23, 2023, the trustee filed her third motion to dismiss, this time for failing to make plan payments. In the motion the trustee alleged that "[t]he Debtor has failed to make timely payments to the Trustee. The Delinquency as of the date of this Motion is approximately $2,472.00." The Court gathers from the trustee's motion that Debtor has not made any plan payments in this case.

B.  The "Reasonable Likelihood" Standard of § 362(e)(1).

Section 362(e)(1) provides:

> Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. . . . The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. . . .

By taking the motion under advisement, the Court by implication continued the automatic stay until it was able to rule. The Court now finds that there is no reasonable likelihood Debtor could prevail at a final hearing on stay relief. The Court will therefore order that the automatic stay be modified for cause under § 362(d)(1) so the bank can proceed with foreclosure.

C. <u>Scheme to Hinder, Delay, or Defraud Creditors With Multiple Filings- § 362(d)(4)(B)</u>.

The bank has asked for more than mere stay relief, however. In addition, the bank seeks an order under § 362(d)(4) that would prevent the imposition of a new automatic stay for two years. Section 362(d)(4) provides:

> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court. . . .

The two-year effectiveness of a § 362(d)(4) stay relief order is enforced by § 362(b)(20):

> The filing of a petition . . .does not operate as a stay . . . under subsection (a), of any act to enforce following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order. . . .

To obtain relief under § 362(d)(4), the creditor must show: (1) that the latest bankruptcy filing was part of a scheme; (2) that the scheme intended to hinder, delay, or defraud the creditor; and (3) that the scheme involved either (a) a transfer of the property without prior approval from the court or creditor or (b) multiple bankruptcy filings that affected the property. *In re McGrath,* 625 B.R. 774, 782 (Bankr. D.N.M. 2020) (citing *In re Tejal Inv. LLC,* 2012 WL 6186159, at *5 (Bankr. D. Utah)); *In re Jacobs*, 2021 WL 2098921, at *9 (Bankr. D.N.M.) (citing *McGrath*). The bank bears the burden of proving all three elements. *McGrath* at 782 (citing *Tejal* and 3 Collier on Bankruptcy ¶ 362.05[19][a]); *see also In re Lee,* 467 B.R. 906 (6th Cir. BAP 2012).

A "scheme" as used in this subsection means a "systemic plan" or "artful plot" that evidences a debtor's "wrongful motive or intent." *In re Lovato*, 2021 WL 3410462, at *6 (Bankr. D.N.M.), citing *In re Hutchins*, 2016 WL 3573966, at *3 (Bankr. D. Colo); *In re Macaulay*, 2012 WL 2919154, at *3 (Bankr. D.S.C.); and *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008). Multiple filings are not per se a scheme to delay, hinder, or defraud creditors. *See, e.g., Smith*, 395 B.R. at 719; and *Lovato*, 2021 WL 3410462, at *6 (citing *Smith*).

Factors relevant to whether the debtor has engaged in a scheme to delay, hinder, or defraud a creditor under § 362(d)(4)(B) by filing multiple bankruptcy cases include: 1) serial filings to stop a foreclosure; 2) the timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales; 3) lack of changed circumstances between filings; 4) failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases; 5) the inability to fund a plan; 6) multiple bankruptcy filings by multiple parties to protect common property; and 7) failure to make any mortgage payments for a long time. *Jacobs*, at *9 (collecting factors from *Lee; In re Lindsay,* 2021 WL 278317, at *7 (Bankr. S.D.N.Y.); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009); and *In re Henderson*, 395 B.R. 893, 901-02 (Bankr. D.S.C. 2008)).

The Court weighs the *Jacobs* factors as follows:

| Factor | Discussion |
| --- | --- |
| 1) Serial filings to stop a foreclosure. | Debtor has filed four bankruptcy cases in four years. The first case had promise, but failed when Debtor could not make the payments. The other three cases cannot reasonably be characterized as good faith attempts to pay the bank's mortgage under a chapter 13 plan. Each case was filed to stop an impending foreclosure sale. |

| | |
|---|---|
| 2) The timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales. | Each case was filed before a special master's sale of the house. There is no question that a primary purpose of each filing was to stop the foreclosure sale. |
| 3) Lack of changed circumstances between filings. | Circumstances have changed somewhat between the first filing and this one, but not to Debtor's net benefit. On the plus side, Debtor has gotten a pay raise. In addition, Debtor may have access to a $30,000 grant from the MFA, which could be used to modify the bank loan. Third, Debtor now has only one car payment, not two. On the other hand, between May 2019 and May 2023, the prepetition mortgage arrearage on Debtor's home loan has ballooned from $32,000 to $91,000. The arrearage is now beyond the reach of Debtor to repay in chapter 13. His only hope of saving his house is to negotiate a loan modification with the bank.[11] |
| 4) Failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases. | Debtor was not able to make his plan payments in his first case, although he made an effort to do so. In the other three cases (including this one), Debtor never made any plan payments. Debtor did not pay the filing fee in the third case. He did not appear for the § 341 creditor's meeting in this case and filed a chapter 13 plan 75 days late. The plan is unconfirmable on its face and is not a good faith attempt at chapter 13 reorganization. |
| 5) The inability to fund a plan. | Debtor is unable to fund a chapter 13 plan that would achieve his goal of keeping his house by paying off the prepetition arrearage. |
| 6) Multiple bankruptcy filings by multiple parties to protect common property. | Debtor and his wife are the only filers. |
| 7) Failure to make any mortgage payments for a long time. | Debtor's last mortgage payment was in March 2021. Debtor has not made regular payments since 2017. |

The factors weigh decidedly toward a finding of a scheme to delay, hinder, or defraud the bank. Debtor's desire to save his house from foreclosure is genuine and laudable. The Court sympathizes with him. However, Debtor's cash flow has never been sufficient to pay the prepetition arrearage in chapter 13. Now, the arrearage is so big that chapter 13 is of no use to him.

---

[11] For example, if Debtor got the $30,000 MFA grant and the bank applied it to the loan balance ($275,000) then re-amortized the reduced balance ($245,000) over 30 years at 5% interest, the monthly principal and interest payment would be $1,315. At 7% the payment would be $1,630. Those payments may be within Debtor's reach.

Because of that, the Court finds that the repeated chapter 13 filings, which started with a legitimate attempt to catch up on the delinquent mortgage, evolved over time into a scheme to delay, hinder, or defraud the bank.

D. <u>The Trustee's Motion to Dismiss-Failure to File a Plan Timely</u>.

The chapter 13 trustee's first motion to dismiss, for failure to file a plan timely, is well taken. Debtor was required to file a plan within fourteen days of the petition date. Fed. R. Bankr. P. 3015(b). Debtor did not file his plan until 90 days post-petition. The significant filing delay constitutes "cause" for dismissal under § 1307(c)(3) (cause includes "failure to file a plan timely under section 1321 of this title").

E. <u>The Trustee's Second Motion to Dismiss-Failure to Attend the § 341 Meeting</u>.

The trustee's second motion, based on Debtor's failure to appear for his § 341 meeting, also is well taken. Debtor's response is that he did not get the mailed notice of the meeting until July 13, 2023, the day the meeting was to be held. The Court cannot credit the response. Notice of the meeting was mailed to Debtor at his home address on May 17, 2023. On the same date, the notice also was mailed to Debtor's non-filing spouse at the same address. There is nothing irregular about the address used by the Bankruptcy Noticing Center. The Court finds that Debtor and his wife received notice of the meeting shortly after May 17, 2023. Debtor failed to attend the meeting for undisclosed reasons. The failure also constitutes "cause" for dismissal under § 1307(c)(1).

F. <u>The Need for an Evidentiary Hearing</u>.

The Court finds and concludes that Debtor has been given sufficient notice and hearing for the Court to rule on the motions before it. If there were fact issues that might sway the Court's decision, it would give Debtor the right to present evidence in support of his positions. Here, the facts taken from the dockets by judicial notice and from Debtor's admissions in his bankruptcy schedules plainly show that an evidentiary hearing would be futile and a waste of time and money.

-10-
Case 23-10397-t13    Doc 49    Filed 08/31/23    Entered 08/31/23 13:48:05 Page 10 of 12

The primary finding of the Court is that Debtor cannot obtain the relief he seeks from chapter 13. Of this finding there is an abundance of support in the record. Debtor cannot cure his $91,000 arrearage and keep the mortgage current as part of a chapter 13 plan. The debt is now too great relative to Debtor's financial resources. To keep his house Debtor must rely on non-bankruptcy means. Furthermore, no evidence is needed about when Debtor filed his chapter 13 plan.

## Conclusion

The Court concludes:

- The bank is entitled to stay relief under § 362(d)(1) and (e)(1);
- The bank is entitled to stay relief for two years, under § 362(d)(4)(B);
- The trustee is entitled to dismissal for cause under § 1307(c)(1); and
- The trustee is entitled to dismissal for cause under § 1307(c)(3).

The Court will enter separate orders giving effect to these rulings.

This result is not as harsh as it may seem. The prepetition arrearage on Debtor's mortgage is too large for Debtor to deal with in chapter 13, given his financial situation. It makes no sense to keep trying something that cannot work. Given that chapter 13 relief is not within Debtor's reach, the sole purpose for further chapter 13 filings would be to obtain the benefit of the automatic stay. That is not a proper purpose. Debtor must look elsewhere for relief from his defaulted mortgage problem, if any relief is available.

/s/ David T. Thuma
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 31, 2023
Copies to: electronic notice recipients

Evan Ray Yellowman
725 Sable St.
Farmington, NM 87401